UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TYRONE STRICKLAND,
   Plaintiff,

  vs.                                       No. 07-1073

ROD BLAGOJEVICH, et al.,
   Defendants.

**<u>SUMMARY JUDGEMENT ORDER</u>**

     This cause is before the court for consideration of the defendants motions for summary judgement. [d/e 41, 45]

### I. BACKGROUND

     The pro se plaintiff, Tyrone Strickland filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Pontiac Correctional Center. On April 20, 2007, the court conducted a merit review of the plaintiff's complaint and found that the plaintiff had adequately alleged that Defendants Illinois Department of Corrections Director Roger Walker, Medical Director Dennis Larson, Warden Eddie Jones, Former Warden Guy Pierce, Dr. Zhang and Dr. Vade had violated the plaintiff's Eighth Amendment rights when they were deliberately indifferent to his serious medical condition.

     Specifically, the plaintiff alleged that he had been diagnosed with a muscular disease and had failed to receive the "proper meds, etc, treatment" for his pain. The plaintiff stated that Dr. Zhang discontinued his treatment for back pain. Dr. Larsen failed to prescribe the appropriate medicine and ignored his sick call requests and Dr. Vade refused to provide a treatment plan.

     The court found that for the purposes of notice pleading the plaintiff had stated a violation of his Eighth Amendment rights. However, the court also noted that many of the exhibits attached to the complaint indicated that it was possible the plaintiff was simply disagreeing with treatment that had been provided. April 20, 2007 Merit Review Order, p.2.

     The defendants have now filed motions for summary judgement and the plaintiff has responded.

### II. FACTS

     Defendant Pierce says he was employed as the Pontiac Correctional Center Warden at the time of the allegations in the plaintiff's complaint. Pierce says he was responsible for the overall administration and operation of the facility and assigned a designee to review all inmate grievances. Consequently, Pierce says he did not review any of the plaintiff's grievances or final

determinations made by the designees. (Def. Memo, Ex B, p 1-2)  Defendant Pierce does not identify any designees.

In addition, Defendant Pierce says he did not meet with the plaintiff to discuss his concerns and had no personal involvement with his allegations.   Pierce says if he had been aware of the plaintiff's concerns involving his medical care, he would have forwarded the grievance to the Health Care Unit.   Pierce says he relied on licensed medical professionals to provide appropriate health care. (Def. Mot, Ex. B)

Defendant Eddie Jones says he became the Warden at Pontiac Correctional Center in April of 2006.  Prior to this, Jones was the Assistant Warden of Operations at Tamms Correctional Center.   Defendant Jones says he was unaware of the plaintiff's grievances and if he had been, he also would have referred them to the Health Care Unit.

The Manager of the Office of Inmate Issues, Terri Anderson, says the responses to the plaintiff's grievances in this case were not signed by Defendant Walker.  Anderson says Defendant Walker did not receive, review or respond to any of the grievances. Instead, this was done by a designee.  The defendants do not identify this designee. (Def. Mot, Ex. A)             .

The plaintiff admits he has never met Defendants Walker, Jones or Pierce. (Def. Memo, Ex. D, p. 61, 65, 68)

The plaintiff transferred to Pontiac Correctional Center on January 18, 2006. Defendants Dr. Vade and Dr. Larson both state that the Health Status Transfer Summary indicates the plaintiff's only chronic condition at the time of his transfer was psychiatric in nature and the plaintiff was receiving Prozac as a result. (Def. Mot, Vade Aff, p. 1; Larson Aff, p. 6).  In addition, the plaintiff did not identify any current complaints upon his arrival. (Def. Mot, Larson Aff, p. 7).

Dr. Larson was the medical director at Pontiac Correctional Center in 2005 and 2006. The doctor has provided an affidavit and copy of medical records reflecting the extensive medical and psychiatric care the plaintiff received both prior and after his transfer to Pontiac Correctional Center. (Def. Mot, Larson Aff. p. 1-24).   The plaintiff was seen by both medical and psychiatric staff dozens of times from January of 2006 to June of 2007.

There is no indication in any of these records that the plaintiff was diagnosed with any muscular disease that required on-going care.   The plaintiff did complain of back pain while at Pontiac Correctional Center and saw Defendant Dr. Zhang on September 28, 2006.  Dr. Zhang states that the plaintiff was complaining of head, neck and back pain.  Based on these complaints, the doctor prescribed two medications.  The first was an anti-inflammatory drug similar to Motrin to help reduce inflamation and swelling and is commonly used to treat conditions such as arthritis or tendinitis. (Def. Mot, Zhang Aff, p. 1).  This drug, Indocin, was prescribed for seven days.

2

The second drug was a muscle relaxant named Robaxin which is effective in relieving muscle pain associated with sprains or strains. (Def. Mot, Zhang Aff, p. 1).  This drug was prescribed for 14 days.  Dr. Zhang states that he "assumed the medications prescribed to him accomplished their goal, because Mr. Strickland did not return to receive any further treatment for low back or neck pain, or headache." (Def. Mot, Zhang Aff, p. 2).

Medical Director Dr. Larson has also outlined his contacts with the plaintiff at Pontiac Correctional Center.  The doctor states on February 1, 2006, he received a letter from the plaintiff claiming he suffered from hypoglycemia and was hungry between meals.  The plaintiff stated he had lost 54 pounds and needed the doctor to order additional food portions for him.  The doctor states that although the plaintiff claimed he had lost weight, the medical records indicated there was little fluctuation in the plaintiff's weight. (Def. Mot, Larson Aff., p. 7-8).  In fact, from his transfer in January of 2006 until March of 2006, the plaintiff had gained two and a half pounds.
(Def. Mot., Larson Aff., p. 8). The doctor responded by advising the plaintiff of the procedures he needed to follow in order to obtain a dietary modification.

The plaintiff ignored these directions and instead on February 19, 2006, he sent in a "resident request" asking for an interview to discuss "medical services, a special diet request & p.m. snack, & medications for chronic disability (adrenal leukodystrophy-muscular dystrophy hypoglycemia, too) to discuss my medical records I have many present high flags creatine kenese lab-reports." (Def. Mot, Res. Request).

Dr. Larson states the health status summary provided when the plaintiff was transferred contradicts his claims of a chronic disability.  In addition, laboratory tests performed prior to his transfer demonstrate there was no merit to the plaintiff's claims. (Def. Resp., Larson Aff, p. 9-10).  The doctor again instructed the plaintiff how to obtain a dietary change.

The plaintiff was evaluated by a medical technician on March 6, 2006.  The plaintiff again claimed he had lost 54 pounds and said he needed a dietary change.  The plaintiff said he had a chronic physical disability and muscular dystrophy. (Def. Resp., Larson Aff, p. 10).  The medical technician's assessment was that the plaintiff wanted a special diet of food that he liked. (Def. Resp., Larson Aff, p. 10-11).

The medical records and affidavit of Dr. Larson demonstrate the plaintiff received on-going mental health care during his stay at Pontiac Correctional Center and he continued to receive his prescription for Prozac as well as other medications. (Def. Mot, Larson Aff.) Psychology Administrator Dr. Garlick noted in the medical record that the plaintiff had a long history of delusions and poor social adjustment in prison. (Def. Mot., Larson Aff., p. 13).  At times, the plaintiff had claimed that transmitters were implanted in dental fillings, and that he was the son of God. (Def. Mot, Larson Aff., p. 11, 17)

Dr. Larson states that in his opinion, based on the plaintiff's mental health, substance

abuse history and medical records, the plaintiff "had no serious medical or mental health need, during the time in question, which he alerted medical staff of that was not properly addressed." (Def. Resp., Larson Aff., p. 1-2).

Dr. Vade says the plaintiff never mentioned any problems with back pain to him at any time prior to receiving a copy of the plaintiff's complaint. (Def. Mot, Vade Aff, p. 2).

The court notes that the plaintiff had attached to his complaint a copy of an order entered in a previous lawsuit as evidence of his claim that he suffered from chronic back pain. The December 14, 1993 order in *Strickland v Peters,* Case No. 90-2280 was entered by this court. The court noted at the time that the plaintiff's voluminous medical record demonstrated he had been seen over 100 times by Pontiac Correctional Center medical personnel in a little over a year and half. The plaintiff had received extensive testing and treatment and doctors were unable to substantiate his complaints. (Comp., Dec. 14, 1993 Court Order.) The plaintiff was transferred from Pontiac Correctional Center to other institutions before he was eventually transferred back in January of 2006.

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in

observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

The defendants argue that they are entitled to summary judgement on the plaintiff's Eighth Amendment claim. In order to show a constitutional violation, the plaintiff must pass both an objective and a subjective test. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id*. Second, the plaintiff must show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The defendants argue that the plaintiff cannot establish either prong of this test.

The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.*

The plaintiff has presented no evidence that he was ever diagnosed with a muscular disease or suffered from any other similar condition.

The Eighth Amendment also requires that the plaintiff "must demonstrate something approaching a total unconcern for his welfare in the face of serious risks." *Duane v. Lane,* 959 F.2d 673, 677 (7th Cir. 1992) In other words, "a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997). Finally,
"the Eighth Amendment is not a vehicle for bringing claims of medical malpractice." *Snipes v. Detella,* 95 F.3d 586, 590 (1996); *see also Gutierrez v Peters,* 111 F.3d 1364, 1374 (7th Cir. 1997) ("[M]edical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim.")

The record before the court demonstrates the plaintiff received on-going medical care through out his stay in the Illinois Department of Corrections. The plaintiff was never diagnosed with a muscular disease and the medical records do not support his claims of any serious physical illness. The plaintiff clearly does suffer with some mental health issues, but the records also demonstrates the plaintiff has been treated by mental health staff and has received

5

medications including Prozac. There is no evidence the defendants were deliberately indifferent to the plaintiff or his medical condition.

The court also notes that several of the defendants are non-medical employees. "If a prisoner is under the care of medical experts....a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v Gillis,* 372 F.3d 218 (3rd Cir. 2004). In addition, the plaintiff has not presented adequate evidence that many of these individuals were aware of his complaints concerning medical care.

In response to the summary judgement motion, the plaintiff says the defendants failed to respond to his discovery requests and refused to allow him an examination by outside doctor. The plaintiff did file a motion to compel. However, he did not provide a copy of any discovery requests and it was unclear what he was referencing. The defendants believed the plaintiff was referring to a set of interrogatories that were not properly served on the defendants. The defendants stated they would voluntarily provide responses, but asked for an extension of time. The extension was granted and the plaintiff admits he did receive responses. [Plain. Resp, d/e 55, p 2].

The plaintiff also states the defendants did not allow him to have an examination by an outside doctor. The plaintiff had filed a motion for an physical examination by an outside doctor, but this motion was denied by the court, not the defendants, on March 18, 2008. The plaintiff did not have money to pay for an independent examination and the plaintiff did not claim he had been denied medical care. In fact, the plaintiff's medical records indicate he has received on-going care from a variety of doctors at each institution involved in his incarceration.

The court notes that the plaintiff has also filed a "reply to defendants response concerning summary judgement" and asks to dismiss Defendants Walker, Pierce and Jones. [d/e 57]. The plaintiff says even if these non-medical defendants "told the Health Care Unit to give me medicine they would not have done it!" [d/e 57, p.1 ] The plaintiff's request is moot because the defendants have demonstrated there is no genuine issue as to any material fact, and they are entitled to summary judgement.

**ITS IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgement are granted pursuant to Fed. R. Civ. P. 56. [d/e 41, 45]   The clerk of the court is directed to enter judgment in favor of the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  See Fed. R. App. P. 24(a)(1)©.  If the plaintiff does**

choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).

3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.

4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.

5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.

Entered this 18th day of February, 2009.

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE